## CAMP vs. WARING.

A petition in chancery can be amended after the facts in the case have been found by a committee.

A petition in chancery having alleged that the respondent, in selling to the petitioner certain real estate, and as an inducement to the purchase, agreed that a debt due to S., secured by a mortgage of said real estate and of other land of the respondent, should be allowed by S. to lie for five years from the time of the purchase ; and a committee having found that it was the understanding of the parties that it should be allowed to lie for a number of years unless sooner enforced by S., and the petitioner having moved to be allowed to amend his petition to make the allegation conform to the fact as found,—it was held, 1. That the amendment was proper in itself. 2. That it might properly be allowed after the report of the committee. 3. That it was no objection to its allowance, that the respondent might not have had a full hearing on the claim of the petitioner as presented by the amended petition, as the court could in its discretion allow a new hearing. 4. That the allowance of costs on the amendment, was a matter of discretion with the court.

But, the court being satisfied from all the facts found in the case, that the petition as amended could not be sustained, and the whole case having been reserved for its advice, the court below was advised to disallow the amendment and dismiss the petition.

THIS was a petition in chancery, brought to the superior court for the county of Fairfield, to obtain the correction of a deed, and an injunction against the prosecution of an action at law.

The respondent, on the 31st day of July, 1851, had sold to the petitioner certain real estate in the town of Stamford, known as the Rippowam Foundery. At the time of the sale it was subject to a mortgage to one Julia Smith, made by the respondent, to secure a note of $5,000, other real estate of the respondent being included in the mortgage. A preliminary contract signed by the parties, and of the above date, provided that the petitioner should pay $20,000 for the property, that the mortgage debt should be reckoned as $5,000 toward the price, and that the petitioner should assume the debt so as to exonerate the respondent and his property therefrom. A conveyance of the property was soon

after made by the respondent to the petitioner, and a mortgage back by the latter. The mortgage contained the following clause : " And whereas the property hereby conveyed, is, with other property belonging to said Waring, subject to a mortgage for $5,000, given by said Waring to Julia Smith, the payment of which and the indebtedness which it was given to secure, I have by agreement with said Waring assumed upon myself as a part of the consideration of his conveyance to me, and have likewise agreed, as I do hereby agree, to pay off and satisfy said mortgage, and the indebtedness it was given to secure, so that the said Waring and all property of his subject to said mortgage, shall be fully and absolutely exonerated from said mortgage and said indebtedness, and all liability to pay or satisfy the same or any part thereof, within "—the clause being followed by a blank space of about two lines.

The petition alleged that the respondent, to induce the petitioner to make the purchase, represented that said Julia was not in want of the money but was desirous that it should remain a permanent loan, and that " he agreed that she would permit the money to remain unpaid for a period of not less than five years from the time of the purchase," which agreement, the petitioner averred, was an important consideration with him in deciding to make the purchase. The petition also alleged that it was understood and agreed between the parties, that the blank in the above clause of the mortgage deed should be filled with the words " not less than five years," or something equivalent, but that by oversight the mortgage was executed without filling the blank.

The respondent, on the 30th day of March, 1853, brought an action at law against the petitioner for the breach of his covenant, in not paying the Smith debt, having previously demanded of the petitioner that he should pay the same, and he neglecting to do so.

The petitioner in his bill prayed for the correction of the mortgage deed, by an insertion in the blank, of the words of limitation above mentioned, and for an injunction against

the further prosecution by the respondent of his action at law.

It was found by a committee, to whom the case was referred, that when the parties were negotiating with reference to the sale, the respondent, to induce the petitioner to purchase the property and pay him the proposed price therefor, represented that the mortgage to Mrs. Smith would probably be permitted by her to lie as a permanent loan, so long as the interest should be punctually paid, it being at the time suggested to the petitioner that he could ascertain by inquiring of Mrs. Smith, who lived near by; and that the petitioner could assume this debt as a part of the $20,000, and pay it when convenient to himself; that the petitioner did not promise the respondent to pay the debt within any specified time, and that the respondent did not promise the petitioner that the claim should not be enforced by Mrs. Smith whenever she thought proper; but that the understanding was, that the mortgage debt might lie for a number of years at least, unless enforced by Mrs. Smith; that the petitioner paid the interest on the debt when due, until the commencement of the respondent's suit, and that Mrs. Smith did not, previous to that time, require the payment of the debt. It was further found, that soon after the negotiation was completed, the parties applied to Charles Hawley, Esq., a counsellor at law, in whom both parties had full confidence, to draw up their agreement in writing, and stated to him substantially the terms thereof, and that he thereupon drew up the contract before mentioned, dated July 31, 1851; and that if there was any disagreement between said written contract and the intention of the parties, it was owing to their misapprehension of the legal effect of said writing; that the only clause in said writing material to the question involved in this case, was the following: " And the said Camp is to pay for the property so conveyed, the sum of $20,000, toward which is to be computed the mortgage given by said Waring to Julia Smith for $5,000, the payment of which said Camp is to assume, and so to assume as to exonerate said Waring and all property of his from payment of the same."

It was further found, that soon afterward the respondent requested the said Hawley to fill out a deed of said premises from himself to the petitioner, and also a mortgage deed of the same premises from the petitioner to the respondent, in accordance with said written contract; and that while drawing up the condition to the mortgage deed, it occurred to the said Hawley, without any suggestion from either of the parties, that it would be desirable for both of them that a time should be limited within which the mortgage debt to Mrs. Smith should be paid, and the said Waring and his property exonerated therefrom, and to accomplish this object he inserted the clause before mentioned ; that the deeds when drawn up were delivered to the respondent, with a note from the said Hawley, suggesting to him the propriety of having the blank filled by mutual agreement before the deeds were executed, said note having been written because said Hawley was about leaving town to be absent several days ; that a few days afterward the petitioner and respondent met for the purpose of executing the deeds and carrying into effect the agreement ; that the petitioner being in haste, and being confident that the deeds were drawn in conformity to the agreement, read a part but not the whole of the same, and executed the mortgage without noticing the clause in question, or the blank, and that the respondent, through inadvertence, did not call his attention to the blank, nor request him to agree upon some time with which to fill the same.

The report of the committee having been made and accepted by the court, at its term in October, 1856, the petitioner moved to be allowed to amend his bill, by inserting in the place of the allegation that the respondent agreed that Mrs. Smith would permit the money to remain unpaid for a period of not less than five years from the time of the purchase, the allegation that he agreed that it should so remain for a number of years at least, unless sooner enforced by the said Julia Smith ; and in the place of the allegation, that it was agreed that the blank in the mortgage deed should be filled with the words, " not less than five years," the allegation that said blank should have been filled according to the aforesaid

understanding and agreement of the parties; with sundry other like amendments to adapt the allegations of the bill to the facts as found by the committee.

The respondent objected to the allowance of the amendments, claiming that they were not in their character allowable, and that no such amendments could be made at that stage of the proceedings, and further claimed that they should be allowed, if at all, only on payment of costs, and insisted that if they were allowed, the report should be rejected, and he be heard anew on the petition as amended.

The questions arising on said motion, and the question what decree should be made on the facts as found, were reserved for the advice of this court.

*Ferris* and *Loomis*, for the petitioner.

1. The court has power, at any time before judgment, to allow amendments at its discretion, according to the circumstances of the case. *Sargeant* v. *Dennison*, 2 Cow., 515. *Rees* v. *Overbaugh*, 4 ib., 124. *Betts* v. *Hoyt*, 13 Conn., 469, and cases there referred to.

2. The report of the committee shows that the petitioner is entitled to relief. And if it appears that the allegations in the bill are not adapted to the relief which the facts found might require, a court of equity will give the petitioner an opportunity to amend his bill accordingly. *Pond* v. *Smith*, 4 Conn., 297.

3. If a serious and irretrievable loss will result to a party from the refusal of an amendment, beyond the loss of a bill of costs and the expense and delay of commencing and prosecuting another suit, the court will allow the amendment asked for. This is peculiarly the case in question. *Betts* v. *Hoyt*, supra.

4. A court of equity will not put the party to the expense and delay of a rehearing, nor compel a party asking for an amendment to pay costs upon its allowance, unless it appears from the case that justice requires it. No facts appear in this case showing that justice requires either. The petitioner is prepared to show, and claims that he ought to be

permitted to show, should any doubt exist in the mind of the court upon this point, that all the witnesses present at the negotiation, testified before the committee, and that the finding of the committee was based upon the testimony of the respondent and his own witnesses. The respondent can not have been surprised therefore by the committee's report, and can not be injured by the amendment, or benefited by a rehearing.

5. The petitioner claims that whether the petition is amended or not, he is entitled to a decree that the respondent shall be enjoined against further prosecuting his suit at law, as the report clearly shows that the action was prematurely brought.

*Hawley*, for the respondent.

1. The amendment can not be made at all. It would introduce an entirely different complaint. The petition now counts on an explicit agreement for five years, " not less than five years," and avers that such agreement was essential to Camp. If amended as proposed, the agreement and whole case would be entirely different, a mere " understanding" for no definite time, dependent entirely on Mrs. Smith's pleasure.

2. If the court can allow the amendment, it ought not to be allowed; for 1st. The petition does not go at all to the merits of our claim, only to the time when the action was brought, and about six years have now passed since the covenant was made. 2d. There was a lapse after our suit was brought of nearly three years before the petition was brought, the petitioner having, during all this time, full knowledge of every thing he now knows. This willful delay is a sufficient answer to his motion. 3d. The amendment would be nugatory, for the petition, if amended, would entitle to no relief. It would set forth no contract, and the " understanding " would, if regarded as a contract, be inoperative for uncertainty, no time being fixed, and all dependent on Mrs. Smith's pleasure.

3. After the report, it is too late for such an amendment.

The case stands on the same footing as if the court had found the facts. *Smith* v. *Barber*, 2 Day, 312, 315. *Hamilton* v. *Wilson*, 1 East, 383, 391. *Robinson* v. *Bayley*, 1 Bur., 316, 322. 1 Swift, 779. *Betts* v. *Hoyt*, 13 Conn., 469. Cooper's Pl., 333, 4. Mitford's Pl., 250, 261, 263. *Jones* v. *Jones*, 3 Atk., 111. *Dormer* v. *Fortescue*, 3 ib., 124, 133. *Goodwin* v. *Goodwin*, 3 ib., 370.

4. If an amendment can be allowed, the respondent should have full costs.

5. And in such case we should have a new hearing. The authority of the committee was merely to find the facts in the case before the court, on the petition as it was. The only claim of the petitioner on the trial, was that the averments of that petition were true; the respondent denied them, and his attention was called only to the denial of them; not at all to the question of the truth of any other matters inconsistent with them; and he has never been heard in reference to such inconsistent matters, and they were, indeed, matters not in issue on the petition. The statute relating to proceedings in equity, (Rev. Stat., tit. xii., ch. 1, sec. 5,) is clear and peremptory; " in all cases of amendment of a bill, &c., the court shall grant the defendant a reasonable time to make answer thereto." Independently of the statute, such is (and for all purposes of justice must be) the practice at law and in equity. 1 Sw. Dig., 639. *Calvary* v. *Williams*, 1 Vez. Jr., 210. *Angersteine* v. *Clarke*, 1 ib., 250. *Spurrein* v. *Fitzgerald*, 6 ib., 548. Mit. Pl., 260. An amended writ or bill is a new writ or bill.

6. On the facts found, the petition, as it stands, must fail; all its material averments are found untrue, and nothing is found that could entitle to relief. 1st. No agreement at all is found, but merely that the " understanding was that the debt might lie a number of years unless enforced by Mrs. Smith;" that Waring merely said the mortgage debt would probably be permitted to lie, but that Camp could learn by enquiring of Mrs. Smith, who lived near by. It is found that Camp made no promise to pay in any given time, and that Waring did not promise that Mrs. Smith would not

enforce the mortgage. All this clearly shows that the "understanding," so called, was (not at all of the nature of a contract, but) a mere opinion entertained; Camp, with abundant opportunity to do it, taking no pains to ascertain whether that opinion was well grounded or not; and having neglected to make any inquiry, he can not complain. 2d. But again, that understanding or opinion obviously was merely that Mrs. Smith would let the mortgage debt lie, on such arrangement as Camp might make with her, he, Camp, assuming it; not that Waring should remain personally liable, and his other property remain mortgaged for it for an indefinite time. His very object was to clear himself and his other property of that indebtedness, as a part of the price for that he sold to Camp. 3d. There is no pretense of omission by mistake in the preliminary contract; and the deed was in all respects conformable to that contract, with the single exception of the blank left, by the scrivener at his own suggestion; the deed, as it is, with that blank, importing the same as the deed without it would. 4th. But even a contract, that the debt should lie for "a number of years," in the very language of the finding, and of the proposed amendments, would be void for uncertainty; so that the petition, if amended as prayed for, would entitle to no relief. What would be the meaning of "a number of years," especially when the time was dependent on the pleasure of Mrs. Smith? And when could an action be maintained on such a contract? 2 Sto. Eq. Jur., secs. 764, 767. Chit. Con., 5th Am. ed., 72. *Bromley* v. *Jeffries*, 2 Vern., 415. *Clinan* v. *Cooke*, 1 Sch. & Lef., 22, 40. *Lindsay* v. *Lynch*, 2 ib., 1, 6. *Harnett* v. *Yielding*, 2 ib., 549, 555. *Guthing* v. *Lynn*, 3 Barn. & Ad., 232.

STORRS, C. J. We are of opinion that it was competent for the superior court, in its discretion, at any time before the passing of a decree in this case, to allow any proper amendments to the petition to be made by the plaintiff; and such amendments are not, therefore, precluded by the return of the report of the committee; and also that the amend-

ments proposed to be made are not, in their character, such as are not allowable by the court. Whenever such amendments are allowed, it is discretionary with the court, under all the circumstances of the case, to permit them to be made with or without costs. Ordinarily, if new facts are introduced into the petition, by way of amendment, which would not properly be the subject of proof under it as originally drawn, and which were not inquired into on the hearing of the facts upon it, whether by the court or a committee, the court should give to all the parties an opportunity to be heard in regard to such new facts, either before itself, or the same or another committee. But if, although such new facts would not strictly be a legitimate subject of inquiry on the original petition, yet if on the hearing upon it, the parties voluntarily permitted and went into a full inquiry in regard to them, and they are embraced by the report of the committee, it would not be incumbent on the court to allow any further inquiry into them. It would, however, be competent and proper to do so, if the court entertained any doubt whether the parties had already had a full hearing in regard to them.

It is plain, and indeed it is not disputed, that in this case, on the petition as it was originally framed, the plaintiff would not be entitled to any relief, for the reason that it is found by the committee, that there was no such contract between the parties as that set up in the petition. It is found that there was no such stipulation as is therein alleged, in regard to the time for which the debt due Mrs. Smith was to be suffered to remain unpaid; but it would appear that the parties, by mutual consent, went into a full inquiry, before the committee, in regard to the contract actually made between them. The manner in which the report presents the facts, is hardly consistent with any other supposition, and it is not claimed that such was not the case, or that there is any new or further evidence on the subject. The object of the plaintiff now in amending his petition as he proposes, appears to be only to conform his petition to the finding of the committee in regard to the real terms of said

contract. He claims that, according to that finding, it was one of its terms that the debt due to Mrs. Smith should be permitted to remain unpaid for a number of years at least, from the time of the purchase, unless it was sooner enforced by Mrs. Smith. It is unnecessary to consider whether such a stipulation would be void for indefiniteness or uncertainty, or whether such a time had not elapsed before the plaintiff brought his suit against the defendant, that the former had a right to require its performance. Whatever might be thought of its validity or effect, on a just construction of the report of the committee, we think that it is not found, as it should have been, affirmatively, if the fact was so, that it formed one of the terms of the agreement between the parties. Without taking time to comment at large on the language of the report, we think that, taking it all together, its fair import is, not that the parties intended to incorporate into their contract any positive or definite stipulation, by which either of them should be absolutely bound, as to the time for which payment by the plaintiff of the debt due to Mrs. Smith should or might be deferred, but only that what passed, in the negotiation which preceded and led to the contract, produced a mere expectation or belief that the debt would be suffered to lie for a number of years at least, unless enforced by Mrs. Smith. This construction or inference seems to be irresistible when we look at the precise terms on which it is stated that the parties "agreed" in regard to the payment of that debt, in connection with the subsequent explicit finding, as to certain points in regard to the delay of its payment, that there was no agreement between them, and the significant manner in which it is subjoined what the "understanding" was, in regard to that debt being permitted to lie. The context here shows that the word "understanding," always a loose and ambiguous one, unless accompanied with some expression to show that it constituted a meeting of the minds of parties upon something respecting which they intended to be bound, was used, not to express anything which was the subject of an agreement or contract between the parties, but only that kind of expectation or

confidence upon which parties are frequently willing to rely without requiring any binding stipulation.

This construction is strongly confirmed by the fact that in the contract drawn by the attorney of the parties, and executed by them, and which preceded and was the basis of the subsequent mortgage to the defendant, no time is specified within which the debt of Mrs. Smith should be paid, and there is no claim that that contract was, in any respect, inaccurately expressed. If we have correctly apprehended the questions on which our advice is sought, we are of opinion that inasmuch as the amendment proposed by the plaintiff would not be of any avail to him, it should not be allowed but that the bill should be dismissed.

In this opinion the other judges, HINMAN and ELLSWORTH, concurred.

Advice that bill be dismissed.